We'll hear argument next in Case 10-1024, Federal Aviation Administration v. Cooper. Mr. Feigin. Mr. Chief Justice, and may it please the Court, if Congress had intended to waive the sovereign immunity of the United States to allow uncapped emotional distress claims under the Privacy Act, it would have, and was required to, state that waiver clearly and unambiguously in statutory text. The substantive requirements of the Act sweep far beyond any preexisting common-law protection of privacy to impose a detailed set of new and pervasive requirements on the collection, maintenance, use, and dissemination of millions of Federal agency records. The Act, for example, forbids agencies from keeping too much information about an individual, compels agencies to collect information about an individual when practical from the individual himself and not from other sources, and can require agencies to safeguard information about an individual even when that information is otherwise already publicly available. Congress would not have taken lightly the question of whether to expose the United States to expansive damages for intentional or willful violations of these novel recordkeeping requirements. Indeed, the way in which the district court believed that the Social Security Administration violated the Privacy Act in this case is something that never would have been actionable at common law and never would have resulted in emotional distress. Ginsburg. And maybe Congress shouldn't have passed this statute, but the injury, the invasion of privacy, that's not something where pecuniary damages are prime, if they exist at all. I mean, this is the thought that this is comparable to is intentional infliction of emotional distress. The person who is subject to this, to this embarrassment, this humiliation, doesn't have out-of-pocket costs, but is terribly distressed, nervous, anxious, and all the rest. The act that the Congress is reaching, the impact of it is of that nature, not, I mean, pecuniary damages do not ordinarily attend conduct that embarrasses, humiliates you, causes mental distress. Well, first of all, Justice Ginsburg, I'd like to respectfully disagree with the premise of the question that the Privacy Act is comparable to common law invasion of privacy. All the requirements I just described that are under the Privacy Act would not have been, as you say, compensable with emotional distress awards. In fact, even if we focus just on the disclosure-related provision of the Privacy Act, it itself is much broader than common law invasion of privacy. Even if it is, even if it is, the damages are not of a pecuniary kind. So you can say that Congress was much more generous than the common law was, but the impact on the person who's suing is not going to be out-of-pocket business loss, pecuniary loss. It's going to be the embarrassment, the humiliation. So it's, it's, if Congress wanted to do something about the impact on the person that has given a right, it's not going to do something that has to do with pecuniary damages, which is not likely the person in this plaintiff's situation is not likely to suffer. Well, first of all, Your Honor, there sometimes are, as there were in common law, pecuniary damages resulting from either violations of the Privacy Act or invasions of privacy, and the government sometimes pays out very large pecuniary judgments. But to get to the core of your question about why Congress might not in the Privacy I think the text of the Act demonstrates that Congress thought about the possibility of providing an emotional distress award, but decided not to do that in the initial version of the Act that it passed in 1974. Instead, that version of the Act in section 5C2B3 assigns to the Privacy Protection Study Commission the task of making a recommendation as to whether the Act should later be expanded to provide for general damages. The commission understood its mission was to determine whether the Act ought to be expanded to provide for dignitary and reputational harms such as compensation for emotional distress. And the Privacy Commission further understood that the Act, as it had been enacted, provided only for actual damages, which it interpreted as synonymous with special damages. Ginsburg. But that's the why. Is a harm to a dignitary interest, is that an actual injury? Would you describe that injury, I mean, there is an injury, the emotional distress, the humiliation, is that an actual injury? The term actual injury and the term actual damages, those are ambiguous terms. Sometimes they might include emotional distress, and sometimes they might not. And it's not. Ginsburg. Well, let's take this case. Did the plaintiff suffer an actual injury? Or at least did he allege that he had suffered an actual injury? He did not suffer actual damages within the meaning of the plaintiff. I didn't ask you that. I asked you, did he suffer an actual injury, as opposed to someone who is complaining about something, an abstract right, an abstract theory, is there an actual injury here? Well, Your Honor, I think my difficulty with the question is that I don't think the term actual injury has some plain meaning out of context. And the term that the Privacy Act uses is actual damages. I think in the context of the Privacy Act, as well as in other contexts. Well, you have to have an injury first before you can get damages. So my question is, was there an injury? Well, if Your Honor's question is whether he suffered an adverse effect within the meaning of Section G1d of the Act, yes, we believe he did suffer an adverse effect sufficient to confer standing. But this Court in Doe described the adverse effect requirement as simply codifying the Article III standing requirements and made very clear that simply because a plaintiff may have suffered an adverse effect, that doesn't mean the plaintiff suffered actual damages. But, Justice Ginsburg, I think that's not the case. Sotomayor, I'm a little bit confused by that, because in your brief, the Solicitor General's brief in Doe, it described the earlier version of general damages in the following way, and I'm quoting from your brief there. The general damages provision in the Senate bill likely derived from the common law of tort of invasion of privacy, where general damages may be awarded as, quote, presumed damages without proof of harm. So I think there, in Doe, you argued that general damages presumed injury. But that's very different than I think the question Justice Ginsburg was asking you. And I read your brief and your arguments as sort of an assumption that if you suffer non-pecuniary harm, you haven't been injured. Well, Your Honor, there's a big difference between presumed damages and proven injury. In Gertz, we reference the common law of tort as requiring actual proof of injury for emotional distress. Most State laws say you have to prove the emotional distress. We're not presuming the injury. So I guess what I'm saying to you, aren't you the one confusing what injury is from presumed damage? I hope not, Your Honor. But the the – I think to get at your question, what we said in the Doe brief is that general damages are a type of presumed damages, and that's correct under the common law. But that isn't all that general damages encompasses. General damages, as the Court recognized in Doe, are always presumed in the sense that they're always assumed – this is the common law definition of general damages – are always presumed in the sense that they're always assumed to have taken place, and an award of general damages can be made even without specific proof of harm. But in cases where, at common law, in cases where a plaintiff did introduce evidence of the extent of, for example, the emotional distress that he'd suffered, so if he wanted to say, I'm not happy with the presumed damages that you would give to just anybody who had suffered this invasion of privacy, I have a particularly sterling reputation, or I'm particularly sensitive to this sort of thing, I suffered a – an increased amount of harm from what you might presume the average person would suffer, the award that that person would receive is a presumed damage. Sotomayor, so why is that different from actual injury? I have – I'm not sleeping. I have a nervous stomach. I'm not eating. The typical things that juries look at to determine whether you've proven emotional distress, why is that not actual injury? So the award that person would receive for the additional proof of emotional distress would be classified as general damages. Now, to get to your question of why that's not actual damages, sometimes the terms actual damages or actual injury can be used to include proven emotional distress. But the term was ambiguous. We cite cases in footnotes 1 and 2 of our reply brief in which the term actual damages or actual damage is used to mean exclusively pecuniary harm. Sotomayor, I've looked at those cases, and in all of them, except for two where the reference wasn't really precise, it was because the use of actual damages in the particular statute were limited to pecuniary harms. Or the nature of the harms at issue were pecuniary by nature. Well, Your Honor, most of those cases are cases out of the common law, and sometimes they use actual damages in the same sentence with a reference to emotional harm, making clear that they think that the two types of harms are separate. But, Your Honor, maybe I can try to explain it this way. I think actually Respondent implicitly agrees with our definition of general damages as including proven harm. If you look at footnote 2 on page 20 of the red brief, and then again at page 22 of the red brief, the definition of actual damages that Respondent is offering, he divides into two subcategories, special damages and general damages. Everybody agrees that special damages are limited to pecuniary harm. And Respondent makes no claim, nor could he, that the type of damages he's seeking are special damages. So to the extent he thinks that he's entitled to recovery under the Act, it's because he thinks that the emotional distress harm that he wants to prove are general damages. And if there's one thing we know about the definition of actual damages in the Act, it's that it doesn't include general damages, because, again, Congress separately, in the text of the Privacy Act, assigned the Privacy Protection Study Commission to make a recommendation about whether the Act should later be expanded to include general damages. Ginsburg. What does actual damages mean under the Fair Credit Reporting Act? Feigin. Your Honor, we don't have a position on that at this point. I can describe to you how we think that the inquiry would work. We think that in some statutes, actual damages might, in context, include emotional distress awards. But the term actual damages by itself, in a waiver of sovereign immunity, is not a clear and unambiguous waiver of the United States' sovereign immunity for claims of emotional distress. And as to statutes which do not allow claims against the United States, it would be a question of context and legislative history. And we'd have to do the same kind of workup of the Fair Credit Reporting Act that we've done of the Privacy Act in this case. One of the things that we can't do, and I think it has been held to mean, damages to a dignitary interest, mental distress, has been held to mean, the term has been held to mean that under the Fair Credit Reporting Act. Feigin. Yes, Your Honor. Multiple courts of appeals have held that, and we're not questioning that conclusion for purposes of this case, with the caveat that we don't think the United States is subject to suit under the Fair Credit Reporting Act. If the United States were subject to suit under the Fair Credit Reporting Act, then because there's ambiguity about the meaning of actual damages, we think that the narrower interpretation is limited to pecuniary harm we'd control. One other distinction between the Fair Credit Reporting Act and the Privacy Act is, again, as I've said, the Privacy Act specifically carves out general damages as a type of damages that aren't going to be awarded, and the Fair Credit Reporting Act does not. The Fair Credit Reporting Act also has a much more permissive remedial scheme, allowing in certain cases for statutory damages and also allowing for punitive damages. I don't think the Fair Credit Reporting Act, for the various reasons I've just mentioned, is a particularly good analog for the Privacy Act. Ginsburg. Just a question of what the term means, what the term actual damages means. Well, Your Honor, again, as we've demonstrated in our brief, I think, again, I'd prefer the Court to footnotes 1 and 2 for how this term was used in the common law, the term actual damages can mean both things. So the fact that in the Privacy Act it does include — it may include emotional distress awards doesn't mean that that's the sense in which Congress used it in the Privacy Act. I'm sorry, I may have said that wrong. The fact that in the context of the Fair Credit Reporting Act it may include emotional distress doesn't mean that that's the way in which Congress used it in the Privacy  And I think that's the way in which Congress used it in the Privacy Act. Kennedy. Are there instances where if there's an invasion of privacy and there's a documented trauma from psychosomatic illness with medical expenses and lost wages, is that special? Is that actual damage? Yes, Your Honor. If there are documented medical expenses that were out-of-pocket expenses, then we think even if they arise from emotional distress, then they would be pecuniary harm and could be compensated under the Privacy Act. I'm sorry, are you arguing that the emotional distress component can't be? The emotional distress component itself cannot be, but medical expenses to treat symptoms of emotional distress. So you're under, as I understand the definition of special damages in common law, if you proved any pecuniary harm, you were also entitled to the mental distress damages as well. So you want half of the common law award. I don't think that's quite correct about the definition of special damages, Your Honor. And I don't think there's any dispute on this. Special damages, the term in this context, is always limited to pecuniary harm. Once you prove that, it also permitted recovery of non-pecuniary losses as well. Well, Your Honor, in a common lawsuit for defamation for cause. That's what your brief said, actually. Well, no, Your Honor. What we said in our brief is in a common lawsuit for defamation for cause, there are two types of damages that could be recovered, special damages and general damages. Unless special damages were limited to pecuniary harm, unless a plaintiff could prove at least some special damages, they wouldn't be entitled to any recovery at all. If a plaintiff could prove some special damages, they could recover not only special damages, in other words, pecuniary harm, but could also recover general damages. That is, damages for emotional distress or other dignitary. We're not talking any differently. That's what I just said. If you put. Yes, Your Honor. I think to the extent I was perhaps disagreeing with you is I was understanding you to say that the definition of special damages, the term, sometimes includes emotional distress awards. The term special damages is limited to pecuniary harm. It's sort of odd for Congress to borrow from the defamation context and with a defined term of art, special damages, and not use it in the Privacy Act if that's what it intended. And to use a term, actual damages, which has a much broader meaning than special damages. Well, Your Honor, as the Court recognized in Doe, there's a structural similarity between the civil remedies provision of the Privacy Act and the remedial scheme for defamation per quad at common law. And I think one reason there might be that structural similarity is that defamation per quad at common law solves the problem that Congress faced when it was crafting the Privacy Act, which is trying to figure out when a plaintiff's injuries are sufficiently serious and concrete as to justify an award of damages. I think it makes sense if, as the Court supposed in Doe, Congress were aware of how defamation per quad had solved that problem, that Congress would have adopted the same as the threshold requirement under the Privacy Act. Now, Congress had very good reason to be cautious about extending the scope of liability under the Privacy Act. As I've said, the Privacy Act regulates a great deal of conduct that wouldn't have been compensable at all in common law, let alone resulted in any sort of emotional distress awards. Now, Congress recognized, I think, some of the concerns that Justice Ginsburg and Justice Sotomayor have raised about why plaintiffs might, in some instances, deserve recovery for emotional distress. But it recognized that there were arguments on both sides, on both sides on that issue, and what it decided to do in the Privacy Act was to defer that issue for later and assign the Privacy Protection Study Commission to make a recommendation about whether the scope of liability under the Act. Ginsburg, the study commission coming after can't say what the statute means. I mean, that would be post-legislative history. I mean, it's the statute exists, and then we have a study commission to see what amendments might be made, but the study commission can't decide what the Act means. Well, two points on that, Your Honor. First of all, the reference of the general damages issue to the Privacy Protection Study Commission is in the text of the Act that Congress enacted in 1974. So the exclusion of general damages doesn't depend at all on anything the Privacy Protection Study Commission said. As to the weight we think the Privacy Protection Study Commission report should receive, first of all, we think it's very telling evidence that there is at the very least ambiguity about what the term actual damages could mean. The Privacy Protection Study Commission interpreted the term actual damages in precisely the same way that we do in our brief. That is, as special damages as that term was understood in defamation torts at common law, which the Privacy Protection Commission study report makes very clear at page 530, is limited to pecuniary harm. And I think for no other reason than that that's a reasonable reading, I think the sort of judicial restraint that is embodied in the canon that requires courts to construe waivers of sovereign immunity narrowly requires this Court to adopt that narrower reading, because it shows that the narrower reading is at the very least a reasonable one or, as the Court said in Nordic Village, is a plausible one. I think it would have been very unusual for Congress silently or ambiguously to have decided to open the door to emotional distress awards under the Privacy Act. As I've said, the Privacy Act is quite a broad substantive act that would have exposed the government to damages in very new ways, and I think this case illustrates that. The district court here concluded that the law enforcement-related disclosure of Respondent's medical information by the Social Security Administration was in fact authorized under the Privacy Act by a routine use published in the Federal Register. But it concluded that Respondent could nevertheless bring suit against the Federal Government under the Privacy Act because the form he filled out in seeking Social Security disability benefits didn't adequately disclose to him that his information might be released to other government agencies for law enforcement purposes. I don't think there's any reason why Congress would necessarily think that an omission on a government form should give rise to a claim for emotional distress damages. There certainly wouldn't have been any analog for it at common law. Ginsburg. But that's just saying that he didn't have a good claim for relief. But let's take the worst case where a government official spreads all kinds of false information, or even true but terribly embarrassing information about a person, does it deliberately. Let's take that case, because your rule covers all of them. Well, in that case, Your Honor, the plaintiff might have a claim under the Federal Tort Claims Act based on a violation of some State law statutory or common law privacy protection. So the category of cases that would have constituted invasion of privacy prior to the Privacy Act might still be available to a plaintiff who might then recover emotional distress damages against the government. But wasn't that the very thing that Congress, why did they pass this in the first place? I mean, Congress was thinking of emotional distress injuries. Well, they passed it, Your Honor, because they wanted, in the wake of Watergate, to impose a set of detailed substantive requirements about Federal recordkeeping. I think the, you know, looking through the Act, which takes up maybe 30 pages of the Petition Appendix, it clearly isn't simply a codification of common law invasion of privacy against the Federal government. It does much, much more than that. Your Honor, even if we look just at the disclosure-related provision, it's broader than common law invasion of privacy in two very important ways. So for common law invasion of privacy, a plaintiff would have to prove disclosure of very personal and private information to the public at large. Under the Privacy Act, however, a disclosure even to a single person would constitute a violation of the Act, and the information doesn't even have to be private. Let me give a concrete example. So if the government has a record that contains information that someone has a criminal conviction, it might be a violation of the Privacy Act for the contents of that record to be disclosed, even though someone could obtain the same information by going to the court records or potentially looking them up on the Internet. And particularly since violations of Federal law are typically the only type of relief a plaintiff can seek for a violation of Federal law is equitable relief under the Administrative Procedure Act, I don't think there's any reason to assume that Congress ambiguously or I think really silently decided that it was going to ratchet things up to a serious degree and expose the United States to uncapped emotional distress damages under the Privacy Act. Ginsburg. It did set a pretty high bar for the plaintiff to meet because the plaintiff would have to prove intentional or willful conduct, not negligence, let's say. Well, three points on that, Your Honor. First of all, I think if Congress had thought that the limitation to intentional or willful conduct was itself a sufficient limitation on the liability of the United States, it wouldn't have been so reluctant to provide for general damages or perhaps even for punitive damages. Second, the courts of appeals now generally interpret the intentional or willful requirement to require only something slightly less than recklessness or slightly more than gross negligence, which in practice provides district courts and courts of appeals with a great deal of flexibility to find intentional or willful violations in cases where the Federal Government doesn't believe it should be liable. Third, to the extent the intentional or willful requirement does impose a limitation on a plaintiff's recovery, what actually winds up happening in practice is that plaintiffs or courts will look to all the various technical provisions of the Privacy Act to try to find some violation that can be classified as intentional or willful. So, for example, if a plaintiff about whom information has been disclosed can't show the disclosure as intentional or willful, he may try to prove that a violation of the — of E-10, which requires the government to safeguard information, was intentional or willful. With the Court's permission, I would like to reserve the balance of my time. Roberts. Thank you, counsel. Mr. Cardozo. Mr. Chief Justice, and may it please the Court, embracing the government's view of actual damages would mean that the very individuals Congress sought to protect in this Act would have no remedy at all for the primary form of harm that was well recognized in common law when this Act was passed. To carry out the Act's protective purposes, this Court need only give the word to the word, actual damages, their common and ordinary meaning that appears in Black's law dictionary, proven, not presumed, liquidated, punitive, or other forms of damages that are not tied to proof of harm. Could I ask you this question about the damages that your client is seeking in this case? If the — if we affirm the Ninth Circuit, would — are you claiming all of the damages that — all of the emotional damages that resulted from his criminal conviction, or are you claiming only the emotional damages that would have been suffered by anybody else whose records were turned over to the FAA under the Operation Safe Pilot Program? If you affirm there will be a proximate causation question that arises on remand, the Act requires the damages to be the result of the violation. So he cannot recover for the emotional distress that followed from the prosecution. But as Justice Ginsburg pointed out, we're talking today not just about Mr. Cooper. We're talking about every single person to whom this Act applies, the whistleblower who the government chooses to silence by embarrassing and humiliating them. Alito, you allege that Mr. Cooper suffered severe emotional distress when he was confronted with the fact that his records had been turned over. So you're saying that the court — that on remand there would have to be a separation of the degree of distress that he suffered as a result of simply knowing that somebody in the FAA had access to his Social Security records, but disregard the distress that somebody in that situation would naturally feel when confronted with the fact that a criminal violation that he had committed had been exposed? Yes. And that's the kind of thing judges routinely have to sort through. For example, someone suffers emotional distress and then they lose their job thereafter, and the injury that produces the emotional distress, the job — the job loss wasn't the proximate cause. Judges — in fact, we ask juries to do that in this case, it would be a judge sifting through that and making that determination. As happened in Petitioner Doe's case, the judge could find that the emotional distress was not the cause of the injury. He could reject it and reject it altogether, but that's the nature of an emotional distress remedy. One thing you didn't hear in that argument almost at all was any discussion of the text of this Act which tells you, in at least four separate ways, that actual damages simply means proven, not presumed, damages. Beginning with the words themselves, that's, of course, the most common meaning of actual damages, the one that appears in Black's law dictionary. As Justice Sotomayor pointed out, the term of art for economic loss in this arena is special damages. If that's what Congress meant, presumably it would have used that term. It's the more common way to express one category of damages only. Alitoson But do you agree that the Act does not allow recovery for what would have been regarded at common law as general damages? Gannon What would have been regarded at common law as presumed, the presumed damages, this Act doesn't allow. That was peeled off in further study. Alitoson General damages, that's the term that they peeled off, right? Gannon Right. But by keeping actual, the juxtaposition between actual and general. Alitoson But general damages is a term from the remedies in defamation cases, right? Gannon Yes. Alitoson And there are two types of damages in defamation cases, special damages and general damages. And if you — is that correct? Gannon Correct. Alitoson So you subtract general damages and what do you have left? Gannon But the interesting thing in this case is they didn't take what you have left, special damages, and they used a different term, Congress did, actual, a term that suggests we're going to require proof of the damages, we're not going to presume them, we're not going to allow speculative damages. Alitoson But the problem is that your definition of actual damages and the general definition of actual damages includes some things that fell within the rubric of general damages. Gannon That's true, but several other things in the text of the Act tell you, again, that actual means simply proven, not presumed. If you look at the Section 2, where Congress recites findings and the statement of purposes of the Act, the right that's being described here is an individual and personal right of privacy, well understood, well settled at the time to be a right that was primarily non-pecuniary in nature. Alitoson Well, let me just try this one more time. You say that there's a right to recover actual damages, but no right to recover general damages. So what you think is recoverable is actual damages minus general damages. Gannon No. Our position is what is recoverable is actual damages. The damages you prove, substantiate. A judge can reject it if they find it unsubstantiated, as happened in Petitioner O'Dohert's case. Kennedy But we don't, the courts don't allow covery for conjectural or speculative damages. That's just, that's just, am I wrong? The Federal courts routinely tell the juries, now you can come in with conjectural or speculative damages. That's not the way juries are instructed. Gannon But you can in this arena at common law presume damages from the nature of the violation. That is what was carved out, the ability to presume it rather than present evidence subject to proof. Breyer Can you tell me what your response is to the government's argument that the Privacy Commission, which was set up, understood the word actual damages at the time the way they understand it? What's your response to that? Are they right about that in your opinion? Gannon Apart from the obvious that the post-enactment report is not objective. Breyer No, I'm asking you what Gannon On the underlying point, several things. The commission, this is a two paragraphs and a 620 page report that doesn't run through the text of the Act, its purpose, all of the things one normally does in statutory construction. So where they draw this conclusion is entirely. Breyer Okay. So am I right in saying you're, you agree with them that that is how the Privacy Commission understood the Act, but in your opinion the Privacy Commission was wrong? Gannon Yes. With one other, with one other proviso I would add, there's a little bit of ambiguity. You see, the Privacy Protection Commission in this two pages was trying to sell Congress on the notion of expanding the remedy. So it wrote, on pages 530 of its report, if the rights and interests established in the Privacy Act are worthy of protection, then recovery for intangible injuries such as pain and suffering, loss of reputation, or the chilling effect on constitutional rights, is a part of that protection. There is evidence for this proposition in common law privacy cases. Surely Congress knew that very thing. Breyer And by pain and suffering, they mean mental pain and suffering. Gannon Right. Surely Congress knew that same thing. So when it enacted this Act, it did not mean to cut out a primary form of harm. Another. Scalia What the government would say is that, and they have their own dictionary definitions. I don't think it's accurate to say that Black's Law Dictionary defines actual damages the way you would have it defined. As I recall, their briefing gives some other definitions from an earlier version of Black's or whatever. But what they say about the commission understanding, which you acknowledge to be contrary to your understanding of actual damages, what they say is that at least shows that it isn't clear what actual damages means. And in their estimation, once you establish that it isn't clear, then you trigger the rule that waivers of sovereign immunity will not be considered to have any scope except that scope which is clear. Gannon Well, that's why it's critical to understand the analysis, because you can't say there's a genuine ambiguity unless you understand how they arrived at that conclusion. The meaning of actual damages can vary with the context, but it's usually crystal clear in each context what you're talking about. In this privacy context, it's fairly clear. We have a provision at page 66A of the appendix, section 2B, where Congress recites the purpose of this remedies provision. And it states, ''The purpose is to hold the United States liable for any damages which occur as a result of.'' The notable thing about that statement of purpose, which occur as a result of, lines up precisely with proven, not presumed damages. But any damages which occur as a result of conflicts directly with the notion of only one category of damages as being authorized. That's Congress' statement of purpose for this very provision. That aligns. Mr. Cooper's construction aligns. The government creates disharmony in the statute. This would save me some time, possibly, but my guess is, and you may know, that every State or many States have statutes or tort laws or something against invasion of privacy. You may know how many, and if you know how many, that's helpful. And of those, if you know how many, how many of them, and perhaps all, provide damages for mental suffering caused by a violation of that particular tort-like provision. Do you know anything about those statistics? Justice Breyer, you've given me a little bit too much credit. I can't give you a number of States, but I can tell you that I'm not aware of any State that disallows. It is by far the general rule, and I think it's universal, that recovery of mental and emotional distress for invasions of privacy. Do you know enough to know if they've done so through the use of a term like actual damages, that one, or analogous thereto, or whether they've had to have some special form of words? I don't know that, so I'll let you know. Of course, you're talking about statutes that require that the material have been made public, not that, say, establish a violation if one agency provides the information to another agency. I mean, as the government points out, this statute goes far beyond any State statutory or common law protections of privacy. It's really very picky, picky. And to say that, you know, whatever emotional harm comes from that is quite different from saying that under State privacy laws, emotional distress is compensable. Yes, but we're all here today only talking about the narrow category of cases in which there's an intentional and willful violation. So they knew the law prevented them from doing what they did. Scalia Well, that's right, but all you have to know is that you shouldn't give it to the other agency, because you're not making it public, you're not doing the kind of thing that constitutes an invasion of privacy under State law. You've just failed, intentionally failed, to follow the very detailed and, as I say, picky, picky prescriptions contained in the Privacy Act. To say that you get emotional distress for that as opposed to genuine, what I would call genuine privacy incursions, which State law covers, is a different question. Yang But this provision is covering a range of intentional and willful violations covered in the Act. The example of the whistleblower, who you want to silence so you leak the most embarrassing details to the press, shaming and humiliating them in front of friends and family, don't leave the house for a month, but you haven't lost your job and you're not out of pocket, zero remedy, zero. That's the government's construction. And look at Section 2, how Congress described this Act. They didn't say we're imposing some picayune technical requirements. They're saying we're doing this to safeguard individual rights of privacy. They used the very lingo. They analogized it unmistakably and explicitly to the common law kind of invasion of privacy for which emotional distress is routinely recoverable. Sotomayor Do you have any statistics on the percentage of actions brought under the Privacy Act in which the plaintiff was able to establish pecuniary harm? I don't have any statistics on that. The one thing I can tell you is that this has been the law in the Fifth Circuit for well over 30 years. As the government, and prior to Doe v. Chau, the rule was in most circuits you didn't have to show any damages. And yet, at that point, a good 37 years after the Act had come into existence, the government stood up here and admitted that far broader construction of the Act than we're talking about today had no meaningful effect on the public. Sotomayor You're saying in the Fifth Circuit or the Ninth Circuit for many years? This case is for coming out of the Ninth Circuit, but the Fifth Circuit has had the rule. It has had this for a long time. In the early 80s, it first recognized emotional distress. Are you aware of any runaway verdicts based on awards of mental damage proof? The only case I'm aware of, I don't know. Sotomayor In six figures or above. Or even high five figures. The highest that I can think of at the moment was a case out of the Fifth Circuit called Jacobs, in which a Federal agency revealed, leaked to the press, information falsely suggesting a bank president was a money launderer. He got 100,000 in emotional distress, but that's a pretty extreme situation. The vast majority, it's going to be modest. And I would say he should get 100,000 in emotional distress. He's an upstanding member of the community and he's being called a common criminal. He might not have suffered any pecuniary loss, but he has suffered actual damages. One other thing about the text that tells you, again, all of these points, points align with Mr. Cooper's construction and produce disharmony on the other side. Look at the breadth of the language Congress used to waive sovereign immunity in subsection G of the Act. Recall that the government's construction is only one small category of plaintiffs who are the victims of intentional and willful violations can recover. Yet the text says, in any suit in which a court determines that there's been an intentional and willful violation, the United States shall be liable for actual damages. If what we mean is only one small category, economic damages is serving as a substantial reduction in the category of cases that can be brought, you would expect to see that limitation appear after the intentional and willful, in any suit in which the court determines there's been willful intentional violation and the plaintiff has suffered economic loss because it is a substantially narrowing term. However, if actual damages simply means proven, not presumed, this wording is perfectly natural and flows exactly. Again, every place you look in the text of the Act, proven, not presumed, aligns. Economic only is a square peg in a round hole in the text of this Act. Kennedy, in your argument, do you have to avoid the concession that the term might be ambiguous? I know your position is that liability for damages is expressly waived, but then you stop there and you say that you resist the idea that the definition of actual damages has to be unambiguous. Is that a fair characterization of your argument? I would modify it slightly. What the government is talking about is an ambiguity in the abstract. They are lifting the two words out of the context of the Act. Like any phrase, actual damages can mean different things in different contexts. But in this statute, when you run through the tools of construction, it's not ambiguous. And that's — That's a different point. And the question went to whether you acknowledge the need to be unambiguous. Now, what the government says is, of course, the waiver of sovereign immunity, you would acknowledge, must be unambiguous. But the government says further, moreover, the scope of the waiver of sovereign immunity must be unambiguous. Whether you have waived it only with respect to pecuniary damages or also with respect to emotional harm, that also must be unambiguous. And you deny that second step, don't you? Actually, we don't, Your Honor. And this is how I would clarify it. What the doctrine of sovereign immunity requires is that the waiver be expressed in text and the court can't read it in. It can't add words to the text. If you — if your intent is to separate out presumed, liquidated, punitive, other forms of damages that do not — are not tethered to proof of harm, actual damages is a phrase that does that precisely, because that's what actual means. It means real. There's no ordinary definition of actual where it means pecuniary only. That is, you get when you use it in certain contexts. So this Court doesn't need to add, expand, or read anything into these words, actual damages. It simply needs to give them the meaning that they have in ordinary English definitions, in Black's law definition, the definition this Court gave to actual damages in the Birdsall case over a hundred years ago is the same thing, presumed, proven damages, not presumed. So the waiver of sovereign immunity is here expressed. It doesn't arise by implication. But the one — but there's another side to the sovereign immunity coin that the government never mentions. The Court's obligation is dual here. When there has been a waiver, the Court can't expand that waiver, but neither can it contract it. You have here the government spinning out theoretical possibilities that actual damages was used in this more peculiar sense. What it really meant was special damages. To produce a deconstruction of the statute that eviscerates it leaves most of the people who suffer intentional and willful violations without any remedy at all. And those who happen to have an economic loss do not get compensation for the primary form of harm from a privacy violation. Roberts The argument you've made, and I certainly understand it, that this is the Privacy Act and so it's precisely these types of damages that you'd be concerned about, really cuts both ways. I mean, what you're saying is this is a really big chunk of damages because this is what the whole Act was about. And it seems to me that that argument suggests that there's some weight to the government's point that, well, if you're going to get into that, you really do need a clear waiver of sovereign immunity. Gershengorn Absolutely. But that circles back to my point that if you're going to — if your intent is to say presumed, not proven, actual fits exactly. Special is the term that wasn't used here. So to fault Congress for picking a term that means precisely proven, not presumed and say you weren't clear enough, that's asking too much, particularly when they also said, in their statement of purpose, they spoke to the remedies provision and said any damages which occur as a result of. They used a sweepingly broad language. They did multiple things to say, reveal no doubt about its intent. And recall the rule from the Morrissette and Malzoff case when Congress is legislating against a common law background. The rule is, if Congress' silence is taken as an indication that Congress intends to follow established norms, not depart from them, when Congress says actual damages in a privacy context, it's fair to — it's going to assume that people can understand that a common law, actual damages included emotional distress or privacy violations. So rather than assuming that it departed from the common law, we typically require a contrary direction under Morrissette and Malzoff, and you don't have that contrary direction here. And you get the same answer as you roll through. You don't need to go past the text, but you get the same answer as you roll through all of the tools of construction. The common law background in the Morrissette-Malzoff rule points you to the same place. The legislative history. This Act, the Act that emerged, was a compromise between a far broader remedial scheme that authorized punitive damages, did not have the intentional and willful requirement, had a negligent standard, and a more measured version. The government's construction of this Act throws that compromise out the window and rewrites the Act as a one-sided in the government's favor, when what clearly happened in the legislature was a balance was struck. Another thing about the legislative history, both the House and Senate bills originally had the term actual damages in there from the start, and they both had actual damages simply as a counterpart to punitive damages. Again, another confirmation, actual damages. Let's suppose this were a common law suit for — for slander per quote, and what was said was that Mr. Cooper received Social Security disability benefits. Now, he would — and he claims that causes him great distress because of the extrinsic fact that he was known to be a pilot, and therefore people who — who knew that he was flying around an airplane even though he was so severely disabled that he was entitled to get Social Security disability benefits, that would damage his reputation. Now, the damages that you're seeking, the emotional distress that he allegedly incurred, what would that be? Which — under what category of damages would that fall? His — his economic loss would be special damages. Damages he could prove. Alito, you don't claim any economic loss here. Right. The damages he could prove would be actual damages. No. Under the — would that be the term that the court, a common law court, would use, actual damages? Wouldn't they ask whether the damages to his reputation and the emotional distress that he suffered therefrom were either — wouldn't they ask whether that was special or general? Well, they could also use actual damages, because, of course, in the Gertz case, the court — Now, Gertz came after the common law. Gertz was a modification of the common law. What would it be at common law? At common law, it would be general damages, but — General damages here are excluded by Congress, right? They were referred for further study, but what was authorized in the text, the substantive provision, is actual damages, not special damages. If Congress had wanted to peel off the whole piece and require only economic loss, the more common and routine term of art that's used is special damages, which circles back to another important point. But elsewhere in the statute, it's made very clear that Congress did not think it was authorizing general damages, right? Because it set up this commission to recommend whether general damages should be included. Now, what would be — what would be the purpose of that commission if, indeed, actual damages already included general damages? It doesn't include general damages. Recall that presumed damages, presumed damages, a substantial portion of the compensation ordinarily available, would be peeled off under our construction. And this was a distinction that actually appeared in the Gertz case, where to place First Amendment limitations on recovery, the Court distinguished between actual damages and presumed damages. So you would say that actual emotional damages are not general damages? I wouldn't say — I would say you could call them general damages in the context of this Act, where Congress does not choose special damages as the term of what it's authorizing, and instead chooses the broader term, actual damages. No, but it does use the term general damages, and makes it very clear that it doesn't think this statute covers general damages. So I think — I think you have to argue that the term general damages includes only presumed emotional harm and not proven emotional harm. That is exactly our position. And the thing I would add to that is general damages, actual damages was in the statute long before general damages surfaced. It appeared at the eleventh hour, and Congress just said, let's send that off to the commission. That's important to keep in mind, because it creates a huge question about what Congress meant to peel off. There is no explanation of general damages. It isn't defined. It arose at the eleventh hour. But the important thing is the term it kept in the statute was not special damages, the term of art that has a pecuniary limitation. It kept the broader term, actual damages, and the term it kept aligns with its statement of purpose, the breadth of the waiver of sovereign immunity, and the non-pecuniary expression, a desire to protect non-pecuniary interests that's throughout the Act. Let me wrap up with a couple of observations here. Congress passed this Act to restore the citizens' faith in their government. And it made a solemn promise to the American citizens that in cases of intentional and willful violation, the United States shall be liable for actual damages. Today, the government is proposing that actual damages be read in a way that renders this Act virtually irrelevant. That makes a mockery of that solemn promise. To preserve the vitality of this Act, this Court need only give actual damages its most common and ordinary meaning, proven, not presumed. Roberts. Thank you, counsel. Mr. Feigin, you have 5 minutes remaining. Feigin. Thank you, Mr. Chief Justice. I just have a few points. First of all, Respondent would like the Court to look to, quote, the common and ordinary meaning of actual damages and asserts that the term actual damages fits exactly here. But no court to consider this issue has ever thought that the meaning of actual damages was plain. You have to look at the context, and the context here includes the exclusion of general damages, which I think Respondent conceded when Justice Alito asked in this question, includes. Sotomayor, you seem to be arguing throughout that general damages meant actual damages. When general damages, in my understanding, meant two things, presumed and actual. So why is it illogical for Congress to look at what general damages meant and pick the meaning that included proven damages, actual? Feigin. Well, Your Honor, I think if you look at the sources cited in our brief, as well as the sources cited in his brief, in particular I'd refer you to the block quote on page 22, general damages, that term, most typically refers to a class or a type of damages that could be presumed, but could also be proven. And when they are proven, and I think Respondent effectively conceded this, they remain general damages. And because Congress decided to think about general damages later, because that would have been such a great expansion of the waiver of sovereign immunity, I don't think the Act should be construed to allow those type of emotional distress damages. Now, Respondent would like to follow up. Sotomayor, I'm still confused. General damages meant presumed or actual? Congress says we don't want general damages because it includes presumed, so we're going to use the word actual. How do you get from that that Congress meant only pecuniary? I mean, that has its – why didn't they just use that? Instead of actual damages, why didn't they just say pecuniary damages, if that's what they intended? Well, Your Honor, I think that's essentially Respondent's argument. He wants to fault Congress for not using the specific term special damages. But I think that flips the canon of interpreting waivers of sovereign immunity on its head and requires Congress to unambiguously not waive its sovereign immunity, when in fact what I think the Court does is precisely the opposite. I also think, Justice Breyer, addressing the Privacy Protection Study Commission, the commission included two of the congressmen who sponsored the Privacy Act. It agreed with our reading, the reading that we're offering here, of what both actual damages mean and what general damages mean. And what – and not only did they agree with that, but there's a statement in the legislative history that adopts our definition, too. It's discussed in our brief. Now, I think what Respondent essentially wants the Court to do here is to adopt the recommendation of the Privacy Protection Study Commission that the Act be expanded to allow both special and general damages, in which case emotional distress awards would be allowed. Now, there may be some good policy arguments for that, as the Privacy Protection Study Commission said, but the judicial restraint that's embodied in the sovereign immunity canon, I think, compels the Court not to get out ahead of Congress on this issue. Congress didn't provide emotional distress awards when it passed the Act in 1974. It never amended the Act to include them, and the Act does not provide for them. Thank you. Breyer. At common law, if you have a minute, I suppose a plaintiff proved that this particular violation of privacy was so terrible he was in bed for a week, he couldn't go to his family's wedding. I mean, absolute, the clearest possible proof. Now, would that have been considered general damages or not? It wasn't presumed, it wasn't speculative, it wasn't anything. It's absolute, tied up, definite. Would that have been considered general damages or would it have been considered special? Emotional distress, even physical symptoms of emotional distress, are general damages. No matter how well proved, no matter how clearly proved. No matter how they're proved, did you say? No matter how clearly they are proved. That's correct, Your Honor. They're general damages. And I can look to verify that. I look at what definition where. Well, first of all, Your Honor, you could look at page 139 of the Dobbs Treatise, which is cited in our brief, which very clearly defines general damages in that fashion. Also, if you look at the secondary statement, sections 621 and 623, they define general they define general damages and emotional distress damages in this context only by reference to proven damages. Thank you. Thank you, counsel. Counsel. The case is submitted.